1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10

11   ROBERT THOMAS CAVALIER,                 Case No. 3:20cv1615-MMA-DEB
     CDCR #E-98747,
12                                           **ORDER GRANTING MOTION TO**
                                Plaintiff,   **PROCEED IN FORMA PAUPERIS;**
13
             vs.                             [Doc. No. 2]
14
15
     GAVIN NEWSOM, Governor;                 **DENYING MOTION TO**
16   JOHN DOE, Director of BPH Operations;   **WITHDRAW AND DISMISS**
17   RANDY GROUNDS, BPH                       **"CAVALIER v. POLLARD"**
     Commissioner; RALPH DIAZ,              **AS MOOT;**
18   CDCR Secretary,
19                              Defendants.   [Doc. No. 3]
20
21                                            **DISMISSING COMPLAINT FOR**
                                             **FAILING TO STATE A CLAIM**
22                                           **PURSUANT TO 28 U.S.C. § 1915(e)(2)**
                                             **AND § 1915A(b)**
23
24

25       Plaintiff Robert Thomas Cavalier, currently incarcerated at Richard J. Donovan

26   Correctional Facility ("RJD") and proceeding pro se, has filed this civil rights action

27   pursuant to 42 U.S.C. § 1983.  *See* "Compl.," Doc. No. 1 at 1.  Plaintiff claims the

28   Governor of California, the former Secretary of the California Department of Corrections

                                         1

and Rehabilitation ("CDCR"), the Director of the Board of Parole Hearings ("BPH"), and BPH Commissioner Randy Grounds ("Defendants") violated his Eighth and Fourteenth Amendment rights during a September 6, 2019 parole suitability hearing. *Id.* at 1-6. He seeks no monetary damages, but instead requests injunctive relief prohibiting the application of "Marsy's Law" to his case, a "new forensic evaluation," and "consideration for COVID-19 release." *Id.* at 6–7.

Plaintiff did not prepay the civil filing fees required by 28 U.S.C. § 1914(a), instead he filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2. Plaintiff has also submitted a Motion requesting that another civil action which he filed prematurely ("Cavalier v. Pollard") be dismissed and or withdrawn without prejudice (Doc. No. 3), a Declaration in support of his Complaint (Doc. No. 5), and an Exhibit which he asks the Court to "attach" to his Eighth Amendment claims (Doc. No. 6).[1]

## I.     Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to

---

[1] Plaintiff's Exhibit is in fact a "Memorandum of Points and Authorities in Support of [a] Petition for Writ of Habeas Corpus." *See* Doc. No, 6 at 1. This Memorandum appears to have been submitted in support of a separate petition for writ of habeas corpus Plaintiff filed in state court, but it includes no California Superior, Appellate, or Supreme Court case number. The Memorandum asks that the State be ordered to show cause why Plaintiff should not be "immediately release[d] … on parole" due to the COVID-19 state of emergency and the "enhanced danger to incarcerated people." *Id.* at 2, 14. However, a review of the publicly available docket in the Second District of the California Court of Appeal indicates Plaintiff *did* file a petition for writ of habeas corpus in that Court on November 9, 2020. That petition remains pending. *See In re ROBERT CAVALIER on Habeas Corpus*, Cal. Ct. App., Second Dist., Div. 2, Case No. B308733, available at https://appellatecases .courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_id=2333266&doc_no=B308733&request_token=NiIwLSEmXkg%2BW0BNSCJdXEtIIFw6USxXIyBeWzlTQCAgCg%3D%3D (last visited Dec. 7, 2020).

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff.

prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether their action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 85–86.

Plaintiff's CDCR Inmate Statement Report and Prison Certificate shows that he had no money in his trust account, carried no average monthly balance, and had no deposits during the six months preceding the filing of this action. *See* Doc. No. 4 at 1, 3. Based on this accounting, the Court GRANTS Plaintiff's Motion to Proceed IFP (Doc. No. 2) and assesses no initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a

---

Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 577 U.S. at 86; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The Court instead directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.    Motion to Withdraw/Dismiss "Cavalier v. Pollard"

Approximately two weeks before he filed this case, Plaintiff filed two separate civil rights actions in *Cavalier v. Newsom, et al.*, S.D. Cal. Civil Case No. 3:20-cv-01398-MMA-KSC ("*Newsom I*"), and *Cavalier v. Pollard, et al.*, S.D. Cal. Civil Case No. 3:20-cv-1379-DMS-AHG ("*Pollard*"). All three cases name mostly the same Defendants, and allege similar claims related to the validity of his September 6, 2019 parole suitability hearing. *See Bias v. Moynihan,* 508 F.3d 1212, 1255 (9th Cir. 2007) (permitting court to take "'notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

Because the claims raised in *Newsom I* were deemed duplicative of those alleged and still pending in *Pollard*, *Newsom I* was dismissed sua sponte pursuant to 28 U.S.C. § 1915A(b)(1) without prejudice to Plaintiff's pursuit of those claims in *Pollard*. *See Newsom I*, S.D. Cal. Civil Case No. 3:20-cv-01398-MMA-KSC, Doc. No. 4.

While *Pollard* still remained pending, Plaintiff filed this case, *Cavalier v. Newsom, et al.,* S.D. Cal. Civil Case No. 3:20-01615-MMA-DEB ("*Newsom II*"), together with another Motion to Proceed IFP, and followed by a "Motion to Withdraw and Dismiss" *Pollard. See* Doc. No. 3. Plaintiff simultaneously filed an identical Motion to Withdraw in *Pollard. See* S.D. Cal. Civil Case No. 3:20-cv-01379-DMS-AHG (Doc. No. 6).

In Plaintiff's Motion to Withdraw and Dismiss, he admits his Complaint in *Pollard*

was incomplete at the time he filed it, and claims *Newsom I* better "articulate[d] what he is trying to explain." *See* Doc. No. 3 at 2–3.  Plaintiff acknowledges, however, that *Newsom I* has already been dismissed without prejudice; therefore, he asks instead to withdraw *Pollard*, and to proceed with his claims as they are alleged in this case, *Newsom II*.  *Id.* at 4–5.

On September 10, 2020, Judge Sabraw construed Plaintiff's Motion to Withdraw *Pollard* as a Notice of Voluntary Dismissal pursuant to Fed. R. Civ. P. 41(a) and dismissed that case without prejudice to pursuit of Plaintiff's claims as re-alleged and currently pending before *this* Court.  *See Pollard*, S.D. Cal. Civil Case No. 3:20-cv-01379-DMS-AHG (Doc. No. 7 at 3–4).  Thus, because *Pollard* has already been dismissed, Plaintiff's duplicate "Motion to Dismiss/Withdraw Cavalier v. Pollard" (Doc. No. 3) is hereby **DENIED** as moot.

## III. Screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a preliminary review pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).  Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion thereof, if it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th

Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

Federal Rules of Civil Procedure 8(a) and 12(b)(6) require a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

B.   Plaintiff's Allegations

On September 6, 2019, Plaintiff claims to have appeared before the BPH Commissioner Defendant Randy Grounds for a parole suitability hearing.[3] *See* Compl. at 4. Plaintiff claims he submitted a "17-page written objection & axiomatic challenge to

---

[3] "The purpose of a parole suitability hearing is to determine if an inmate should be released from prison. Parole suitability hearings are usually conducted in-person at the prison where the inmate is located." *See* https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/ (last visited Dec. 7, 2020).

the BPH forensic CRA ([comprehensive] risk assessment)"[4] sometime prior to the "onset of the parole suitability hearing" based on a "multitude of factual errors, misleading assertions, and hyper-conjecture utilized by the forensic psychologist (Reynoso) to misdiagnose [him] with a 'mental disorder.'" *Id.*; *see also* Pl.'s Decl. at 6.

Plaintiff also objected to Grounds's "reconstruct[ion]" of his 1994 commitment offense, one count of felony possession of weapon in jail in violation of Cal. Penal Code § 4574(a) in Los Angeles Superior Court Case No. BA092651–01, as violent. *Id.* at 3, 4, 5, 8; Pl.'s Decl. at 1.[5] "At the spur of the moment," and just "seconds into the record," Plaintiff admits Grounds "understood" that there were "problems with the CRA," stated: "[W]e are not going to consider []or use [it]," and "immediately withdrew the CRA from the record." *See* Compl. at 4, 13. Plaintiff nevertheless claims Grounds then proceeded to commit a "sequence of due process violations," by "illicitly impos[ing] an added term of confinement" under Marsy's Law "ex post facto," by considering his "admissions of an uncharged crime," and by failing to "afford [him] equal administration of law" when

---

[4]  Before a parole suitability hearing, the Forensic Assessment Division of BPH issues a Comprehensive Risk Assessment ("CRA") to all inmates. The purpose of the risk assessment is to help identify an inmate's "potential for future violence and protective factors that could minimize his or her risk if released to the community." *See* https://www.cdcr.ca.gov/bph/ divisions/fad/ (last visited Dec. 7, 2020).

[5]  "In 1994, [Plaintiff] was convicted of possession of a deadly weapon in jail, a shank, in violation of Penal Code section 4574, subdivision (a) [footnote omitted]. He also admitted two prior serious felony convictions within the meaning of the 'Three Strikes' Law (§ 667, subds. (b)–(i)), and two prior prison terms within the meaning of section 667.5, subdivision (b). He was sentenced to a total prison term of 27 years to life." *People v. Cavalier*, 2018 WL 1622580, at *1 (Cal. Ct. App. 2d District, Div. 2, April 5, 2018). After the passage of California's Proposition 36 (the Three Strikes Reform Act), Plaintiff filed a petition for resentencing, arguing that the weapons he possessed, two six–inch tooth brush handles … modified by removing the bristles from the heads and sharpening the opposite ends into points," were not "deadly weapons, and that he was not "armed" within the meaning of Cal. Penal Code § 667(e)(2)(C)(iii) and § 1170.12(c)(2)(C)(iii). *Id.* at *2. Both the trial court and the Court of Appeal rejected those arguments. *Id.* at *3–8.

he denied Plaintiff release on parole for 7 years without considering the "conflict" between California Propositions 9 & 57.[6]  *Id.* at 3, 5. 11–12; Pl.'s Decl. at 1–4.

Plaintiff further contends Grounds, together with Governor Newsom, and the unidentified Director of BPH Operations, "knowingly promulgated racism" in denying him parole on September 6, 2019, because "each … is responsible for the hidden vernaculars used to disproportionately stif[]le, stricken, harden, or otherwise impede the fair hearing and adjudication process," and "the parole system is a mega chapter of a systematically racist bias and unjust mass incarceration experiment stemming from the fruits of the tree of evil."  Compl. at 6; Pl.'s Decl. at 5.

Finally, Plaintiff claims the denial of parole "now jeopardizes [his] health and welfare" because he suffers from chronic asthma and bronchitis, and "stands to suffer irreparable harm" should he contract COVID-19 after spending "decades behind bars." Compl. at 3.  Plaintiff contends Defendants Grounds, Governor Newsom, the BPH Director, and CDCR's former Secretary Ralph Diaz have thus imposed cruel, unusual and excessive punishment upon him in violation of the Eighth Amendment rights by "failing to protect" him from the "iatro[ge]nic" "crisis in California prisons."  *Id.*; *see also* Pl.'s Decl. at 6.

---

[6] California's Proposition 57, passed in 2016, added a provision to the California Constitution to read: "[a]ny person convicted of a *nonviolent* felony offense and sentenced to a state prison shall be eligible for parole consideration after completing the full term for [their] primary offense."  Cal. Const. art. I, § 32, subd. (a)(1) (hereafter [§] 32(a)(1)) (emphasis added).  Section 32(a)(1)(A) defines "the full term for the primary offense" as "the longest term of imprisonment imposed by the court for any offense, excluding the imposition of an enhancement, consecutive sentence, or alternative sentence."  *See In re Edwards*, 26 Cal. App. 5th 1181, 1184 (Cal. Ct. App. 2018); *Harrington v. Covello*, No. 19-CV-1824-LAB-RBM, 2020 WL 3270826, at *2 (S.D. Cal. June 17, 2020). "Marsy's Law, which was passed by the California electorate in 2008 as Proposition 9, amended the California Constitution and added provisions to the Penal Code in order to strengthen and increase the number of crime victims' rights."  *People v. Marquez*, 56 Cal. App. 5th 40, 97–97 (2020) (citing *People v. Johns*, 50 Cal.App.5th 46, 68 (2020)).  "Marsy's Law amended the California Constitution to grant crime victims the right '[t]o a speedy trial and a prompt and final conclusion of the case and any related post-judgment proceedings' (Cal. Const., art. I, § 28, subd. (b)(9)), and '[t]o have the safety of the victim, the victim's family, and the general public considered before any parole or other post-judgment release decision is made' (*id.*, subd. (b)(16))."  *Id.*

C.    42 U.S.C. § 1983

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.  Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

Under these parameters, Plaintiff may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility ... and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).  Thus, in this case, Plaintiff may seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole.  *Id.*; *see* Compl. at 6 (seeking relief in the form of a "NEW forensic evaluation.").  He may not, however, seek "consideration for COVID-19 release," *id.*, as a remedy in this § 1983 action.  *See Wilkinson*, 544 U.S. at 78 ("[A] prison in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement.  He must seek federal habeas corpus relief (or appropriate state relief) instead."); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("[H]abeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas corpus, and such claims may not be brought in a § 1983 [civil rights] action.").

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012); *see also Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) ("Pursuant to § 1983, a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law.").

9

1         D.     <u>Fourteenth Amendment Claims</u>

2         As summarized above, Plaintiff claims Defendants violated his Fourteenth

3    Amendment rights to due process and equal protection during his September 6, 2019

4    parole suitability hearing.  *See* Compl. at 4–6; Pl.'s Decl. at 1–4.

5         *1.    Due Process*

6         The Fourteenth Amendment prohibits the deprivation of life, liberty or property

7    without due process of law. U.S. Const., amend. XIV.  "Application of this prohibition

8    requires the familiar two-stage analysis: We must first ask whether the asserted individual

9    interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty

10   or property'; if protected interests are implicated, we then must decide what procedures

11   constitute 'due process of law.'"  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). A

12   liberty interest may be created by the Constitution or by state law.  *Meachum v. Fano*,

13   427 U.S. 215, 226 (1976).

14        Prisoners do not have a federal Constitutional right to be conditionally released

15   before the expiration of a valid sentence.  *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011);

16   *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

17   California, however, has statutorily created a liberty interest in parole.  *See Swarthout*,

18   562 U.S. at 220; *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's

19   parole scheme gives rise to a cognizable liberty interest in release on parole.").

20   Accordingly, California authorities must provide some procedural protections when

21   determining parole eligibility.  *Swarthout*, 562 U.S. at 219.  The procedures required

22   however, are minimal—prisoners must be provided only an opportunity to be heard and a

23   statement of reasons why parole was denied. *Id.* at 220. "'[M]ere error of state law' is not

24   a denial of due process." *Swarthout*, 562 U.S. at 222  (quoting *Engle v. Isaac*, 456 U.S.

25   107, 121, n.21 (1982)).  "[T]he responsibility for ensuring that the constitutionally

26   adequate procedures governing California's parole system are properly applied rests with

27   California courts, and is no part of the [federal court's] business."  *Id.*

28

Here, Plaintiff admits he "appeared before … BPH Commissioner Randy Grounds," was present during his September 6, 2019 parole suitability hearing, and "personally witnessed" Grounds allegedly "abus[e] his discretion" while considering Plaintiff's "public safety risk factors." *See* Compl. at 4; Pl's Decl. at 1–2. Plaintiff further alleges he had the opportunity to submit a "17 page written objection & axiomatic challenge to the BPH forensic CRA," and challenged its "multitude of factual errors, misleading assertions, and hyper–conjecture" during the hearing. *See* Compl. at 4. Indeed, Plaintiff's efforts with respect to the CRA were *successful*—for he admits Grounds "subsequently elected to withdraw the CRA from the entire record," and indicated it would not be considered when evaluating Plaintiff's suitability. *Id.* at 4; Pl.'s Decl. at 6. Based on these assertions, the Court finds Plaintiff's pleading is replete with factual allegations which show he was provided both "an opportunity to be heard and a statement of reasons why parole was denied." *Swarthout,* 562 U.S. at 220; Compl. at 10 (acknowledging the "individualized factors of aggravation" "rendered on the record at the decision handed down by Commissioner Randy Grounds.")

In addition, the Court notes Plaintiff's suit is not so much a challenge to the procedures Grounds employed during the September 6, 2019 hearing as it is an attack on the sufficiency of the evidence Grounds relied upon, and the final determination to deny him for parole for a period of 7 years. *See, e.g.,* Compl. at 5 (claiming Grounds failed to apply the "great weight" standard afforded to youth offenders under Prop. 57); *see also* Pl.'s Decl. at 3 (objection to Grounds's "reweigh[ing] [of] the elements of [his] offense under the meager preponderance standard."). But *Swarthout* explicitly bars any challenge to the sufficiency of the evidence to support the Board's decision. *Swarthout*, 562 U.S. at 222 ("Because the only federal right at issue is procedural, the relevant inquiry is what process Cooke and Clay received, not whether the state court decided the case correctly."); *see also Roberts v. Hartley*, 640 F.3d 1042, 1046 (9th Cir. 2011) (noting that it "makes no difference that [the plaintiff] may have been subjected to a misapplication of California's 'some evidence' standard. A state's misapplication of its

own laws does not provide a basis for granting" relief.); *Miller v. Oregon Bd. of Parole and Post-Prison Supervision*, 642 F.3d 711, 717 (9th Cir. 2011) (issue is not whether Board's parole denial was "substantively reasonable," or whether the Board correctly applied state parole standards, but simply was "whether the state provided Miller with the minimum procedural due process outlined in [*Swarthout v.*] *Cooke*").

As such, the Court finds Plaintiff's Complaint does not plausibly allege a Fourteenth Amendment due process claims against BPH Commissioner Grounds.  *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *see also Vaught v. Oppedisano*, No. 20CV1500-MMA-RBB, 2020 WL 5819853, at *4–5 (S.D. Cal. Sept. 30, 2020) (sua sponte dismissing prisoner's § 1983 claims related to parole suitability hearing on due process grounds pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A because allegations in complaint showed prisoner "was given the opportunity to be heard," "was provided with the reasons for the conclusions in the CRA and for the denial of his parole."); *Cyprian v. Cross*, No. 2:19-CV-1925-EFB P, 2020 WL 5070592, at *2 (E.D. Cal. Aug. 27, 2020) (dismissing California prisoner's § 1983 objection to parole board's consideration of "inaccurate information" sua sponte pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and noting that "[s]o long as the inmate is provided an opportunity to respond to his record … and provided a statement of reasons for the denial, due process is satisfied.").

As to Defendants Newsom, Doe, and Diaz, Plaintiff makes no specific allegations as to how any of them personally participated in his September 6, 2019 parole suitability hearing or otherwise violated his due process rights.  "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) (stating that "[c]ausation is, of course, a required element of a § 1983 claim.").  Plaintiff claims only that Governor Newsom and John Doe "knew or should have known of the constitutional violations occurring within the BPH," *see* Compl. at 2, because they they "oversee" and "direct" BPH operations.  *Id.*  He does not allege that Newsom or Doe

personally participated or served as a decision–maker on his September 6, 2019 parole suitability review tribunal.[7]  *See e.g., Brown v. Shaffer*, No. 1:18-CV-00470-JDP, 2019 WL 2089500, at *8 (E.D. Cal. May 13, 2019) (recommending sua sponte dismissal of prisoner's § 1983 due process claims against defendant who was "neither a decision-maker in the tribunal that denied plaintiff parole" pursuant to 28 U.S.C. § 1915A), *report and recommendation adopted*, No. 1:18-CV-00470-AWI-JDP PC, 2020 WL 3977449 (E.D. Cal. July 14, 2020).

There is no respondeat superior liability under 42 U.S.C. § 1983.  *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993).  "Because vicarious liability is inapplicable to ... § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in" in order to state a claim).  Supervisory officials, like the Governor and Director of the BPH, may only be held liable under § 1983 if Plaintiff alleges their "personal involvement in the constitutional deprivation, or ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Keates v. Koile*, 883 F.3d 1228, 1242-43 (9th Cir. 2018); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).  Because he does not allege that either Newsom or Doe "through [his] own individual actions, ... violated the Constitution," Plaintiff fails to state a due process claim against them as well. *Iqbal*, 556 at 676; *Jones*, 733 F.2d at 649; *see also Vaught*, 2020 WL 5819853, at *5.

//

//

---

[7] Parole suitability hearings are conducted by a two or three-person panel comprised of commissioners and a deputy commissioner. *See* https://www.cdcr.ca.gov/bph/parole-suitability-hearings-overview/ (last visited Dec. 7, 2020).

### 2.     Equal Protection

Plaintiff also claims Governor Newsom and the Director of the BPH "deprive non-violent offenders equal protection under the law" by employing "illicit practice[,] policy[,] and procedures … cultivated[,] designed and well[-]versed to orchestrate fraudulent grounds for systematic denials against Prop. 57 offenders the CDCR deemed by fore-drawn [sic] conclusion would be denied."  *See* Compl. at 5.  He claims these Defendants "inherited a system that collectively and disproportionately abuses the civil rights of the minority," and that they are now "effective cohorts in the system's deplorable abuses."  *Id.* at 6.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Fourteenth Amendment's Equal Protection Clause protects prisoners against invidious discrimination that is based on an impermissible factors such as race, gender, religion, or the like.  *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997).  But Plaintiff's sweeping and conclusory allegations do not plausibly show that *he* was treated differently than other similarly situated California inmate eligible for parole *because* he is a member of any protected class.  *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also Village of Arlington Heights v. Metro. Housing Development Corp.*, 429 U.S. 252, 264-65 (1977) (requiring "racially discriminatory intent or purpose" to support an equal protection violation); *Crutcher v. Williams*, No. 2:10-cv–00474-KJD-RJJ, 2010 WL 4366357 at *2 (D. Nev. Oct. 28, 2010) (dismissing as conclusory prisoner's "claim[s] [that] he was denied equal protection as guaranteed by the Fourteenth Amendment because of a purported racial disparity in the grant of parole" based on "an informal survey he conducted"); *Lum v. Penarosa*, 2 F.

Supp. 2d 1291, 1294 (D. Haw. 1998) (dismissing claims that prisoner' was denied parole in violation of equal protection where he failed to "point[] to [any] other similarly situated inmate, or class of inmates who ha[d] been differently treated," and "presented no evidence [in his parole proceedings] of … [any] discriminatory intent."); *cf. Block v. Potter*, 631 F.2d 233, 238, 241 (3d Cir. 1980) (finding parole board violated petitioner's right to equal protection because, in the minutes explaining the denial of parole, the board "considered Block's race as one factor warranting harsher treatment for him than for the 'typical' black or Puerto Rican applicant.").

Thus, without more, Plaintiff has not and cannot state a plausible equal protection claim with respect to his September 6, 2019 parole suitability determination. *See e.g., Uhuru v. Mancusi*, No. 2:20-CV-2088 KJN P, 2020 WL 6742749, at *4 (E.D. Cal. Nov. 17, 2020) (dismissing prisoner's "vague and conclusory" equal protection allegations against parole officials who purportedly denied parole based on "atheist dogma" sua sponte pursuant to 28 U.S.C. § 1915A).

E.  Ex Post Facto Claims

Next, while Plaintiff's Complaint does not clearly allege a separate ex post facto challenge to his September 6, 2019 parole suitability determination, the Court will liberally construe his claims that Defendant Grounds "impos[ed] a[n] added term of confinement[,] *e.g.* 7 years," "ex post facto under Mar[s]y's Law," *see* Compl. at 5, Pl.'s Decl. at 1, 3, 4, as a distinct federal constitutional cause of action for purposes of initial screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (documents filed pro se are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations omitted).

Article I, section 10 of the United States Constitution prohibits the States from passing any ex post facto law. "To fall within the ex post facto prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal

conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted). Some retroactive changes in parole laws may violate the Ex Post Facto Clause, but "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000). The controlling inquiry in examining a change to a parole law is "whether retroactive application of the change ... create[s] 'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* (quoting *Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). Speculative and attenuated risks of prolonging incarceration do not establish a violation of the Ex Post Facto Clause. *Morales*, 514 U.S. at 509.

Here, to the extent Plaintiff seeks a new parole hearing based on claims that the application of Proposition 9 ("Marsy's Law") to his September 6, 2019 suitability hearing resulted in an "added term" of 7 years in violation of the Ex Post Facto Clause,[8] *see* Compl. at 5; Pl.'s Decl. at 4, his Complaint fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

"Even assuming, without deciding, that the statutory changes decreasing the frequency of scheduled hearings [c]ould create a risk of prolonged incarceration," Proposition 9 is not an ex post facto law because it allows the parole board, in its discretion, to advance a parole hearing, and "an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing."[9] *Gilman v. Brown*, 814 F.3d 1007, 1109 (9th Cir.

---

[8] Before enactment of Marsy's Law, parole hearings following an initial denial of parole had to be convened within one year of the denial unless the Board found that it was unreasonable to expect that parole could be granted the following year. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1104 (9th Cir. 2011) (citing Cal. Penal Code § 3041.5(b)(2) (2008)). Proposition 9 modified this time period and authorizes the deferral of a subsequent parole hearing for a period up to fifteen years. *Id.*; *see* Cal. Penal Code § 3041.5(b)(3) (2009).

[9] "Notwithstanding these deferral periods, Proposition 9 allows an inmate to request that the Board advance the date of his next parole hearing. To do so, an inmate submits a petition to advance ('PTA')

2016) (quoting *Morales*, 514 U.S. at 513); *see also In re Vicks*, 56 Cal.4th 274, 278–79, 317 (2013) (holding that Marsy's Law does not violate the Ex Post Facto Clause in the U.S. Constitution or the California Constitution); *Johnson v. Soto*, No. CV 14-9441 CAS (RAO), 2019 WL 2719810, at *21 (C.D. Cal. June 7, 2019) (dismissing prisoner's claim that "the enactment and application of Proposition 9, commonly known as Marsy's Law, violate[d] his rights under the Ex Post Facto Clause of the Constitution") (citing *Gilman*, 814 F.3d at 1016–21), *report and recommendation adopted*, No. CV 14-09441 CAS (RAO), 2019 WL 2719406 (C.D. Cal. June 25, 2019*); Jameson v. Chappell*, No. CV 13-04037-CAS VBK, 2014 WL 5528385, at *8 (C.D. Cal. Sept. 5, 2014) (recommending dismissal of ex post facto challenge to Marsy's Law in light of *Gilman*), *report and recommendation adopted*, No. CV 13-04037-CAS VBK, 2014 WL 5581320 (C.D. Cal. Oct. 29, 2014).

     **F.**    Eighth Amendment Claims

     Finally, Plaintiff claims Defendants' September 6, 2019 decision to deny him parole for a period of seven years amounts to "excessive" punishment" and that his "continued incarceration" jeopardizes his health and welfare because he is "predisposed to [a] substantial risk" of contracting COVID-19 "due to [his] chronic asthma & bronchitis." *See* Compl. at 3; Pl.'s Decl. at 6.

     First, to the extent Plaintiff challenges the validity of his continued confinement as a result of his September 6, 2019 parole suitability determination on grounds that it amounts to excessive punishment in violation of the Eighth Amendment's proscription of

---

setting forth 'the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate.'" *Gilman*, 814 F.3d at 1011 (quoting Cal. Penal Code § 3041.5(d)(1)); *see also Rios v. Warden of CSP-Corcoran*, No. 1:11-CV-00667-EPG-PC, 2018 WL 2463870, at *4 (E.D. Cal. June 1, 2018), *report and recommendation adopted*, No. 1:11-CV-00667-LJO-EPG-PC, 2018 WL 10809620 (E.D. Cal. July 30, 2018). In fact, Plaintiff filed a petition to advance his next parole suitability hearing on July 31, 2020, but it was denied. *See* https://inmatelocator.cdcr.ca.gov/ Details.aspx?ID=E98747 (Board of Parole Hearing Actions) (last visited Dec. 7, 2020).

cruel and unusual punishments, his claims must be dismissed for failing to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(B)(a).  This is because the relief Plaintiff seeks, *i.e.*, "consideration for COVID-19 release," and an "immediate[] release … on parole, *id.* at 6; Pl.'s Ex., Doc. No. 6 at 14, may not be pursued in civil rights action even if he could allege a plausible claim.[10] *See Nettles*, 830 F.3d at 927–28 ("Although "the literal terms of § 1983 might seem to cover" claims that a prisoner's confinement violated the Constitution, … the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally "has been accepted as the specific instrument to obtain release from [unlawful] confinement.") (quoting *Preiser*, 411 U.S. at 486, 489).

Second, Plaintiff claims his continued incarceration amounts to an Eighth Amendment "failure to protect" violation because he suffers from chronic asthma and bronchitis and "California prisons are a hot bed for contagion and infectious disease." *See* Compl. at 3, 6. But these types of broad and conclusory allegations are insufficient to state a plausible Eighth Amendment claim.  *See Iqbal*, 556 U.S. at 678-79.  Although a complaint "does not need detailed factual allegations, ... a plaintiff's obligation to provide

---

[10] Plaintiff's Eighth Amendment excessive punishment claims would face an additional hurdle even if they were properly raised in a § 1983 action. No violation of the Eighth Amendment occurs merely because a prisoner is determined unsuitable for release on parole during the service of an otherwise valid indeterminate prison term. *See Harris v. Long*, No. CV 12–1349–VBF (PLA), 2012 WL 2061698, at *8 (C.D. Cal. May 10, 2012) ("[T]he Court is unaware of any United States Supreme Court case holding that either the denial of parole and continued confinement of a prisoner pursuant to a valid indeterminate life sentence, ... constitutes cruel and unusual punishment in violation of the Eighth Amendment. Indeed, the Supreme Court has held that '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'") (quoting *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 7 (1979)); *Prellwitz v. Sisto*, No. Civ S-07-0046 JAM EFB P, 2012 WL 1594153, at *6 (E.D. Cal. May 4, 2012) (rejecting a similar Eighth Amendment claim and holding that "[w]hile petitioner might have hoped or expected to be released sooner, the Board's decision to deny him a parole release date has not enhanced his punishment or sentence."); *see also Rosales v. Carey*, No. CIV S-03-0230 JAM DAD (TEMP) P, 2011 WL 3319576, at *8 (E.D. Cal. Aug.1, 2011) ("[T]he Ninth Circuit has said that any emotional trauma from dashed expectations concerning parole 'does not offend the standards of decency in modern society.'") (quoting *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 846 (9th Cir. 1985)).

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).  A complaint must proffer "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

Neither Plaintiff's Complaint nor his Declaration allege any particular wrongdoing or specific action taken by Governor Newsom, John Doe Director of BPH, BPH Commissioner Randy Grounds, or Ralph Diaz, the former Secretary of the CDCR, with respect to his health or safety at RJD.  *Iqbal*, 556 U.S. at 676; *Jones*, 733 F.2d at 649.  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *see also Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

Moreover, even assuming Plaintiff *had* alleged personal liability on the part of any Defendant, and *could* seek injunctive relief requiring a new parole hearing (but not an earlier or immediate release) in light of the dangers posed by COVID-19, *see Wilkinson,* 544 U.S. at 74-75, his bare allegations as to the existence of the global pandemic, the prevalence of coronavirus within California's prisons, and his understandable desire to avoid contracting the virus simply are not enough to state an Eighth Amendment claim.  *See Torres v. Milusnic, __* F. Supp. 3d __, __, No. CV-20-4450-CBM-PVC(x), 2020 WL 4197285, at *7 (C.D. Cal. July 14, 2020).

"'[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks, emphasis, and citations omitted).  "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" which is one of "deliberate indifference" to inmate health or safety.  *Id.*

"[I]t is not enough to show [RJD] inmates are at risk of contracting COVID-19 or

that [Defendants] were aware of that risk." *See Torres*, __ F. Supp. 3d at __, 2020 WL 4197285, at *9.  "A prison official may be held liable under the Eighth Amendment for acting with 'deliberate indifference' to inmate health or safety only if he knows that inmates face a substantial risk of serious harm *and* disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  Under this standard, "prison officials who actually kn[o]w of a substantial risk to inmate health or safety may be found free from liability if they respond[] reasonably to the risk, even if the harm ultimately [i]s not averted." *Id.* at 844.  To allege deliberate indifference, therefore, Plaintiff must include "factual content" from which the court might reasonably infer that each Defendant he seeks to sue had a subjective "state of mind more blameworthy than negligence," and more akin to criminal recklessness.  *Id.* at 835, 839–40.

Even when liberally construed, Plaintiff's Complaint cannot reasonably be read to suggest any deliberate indifference.  Defendants must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but they "must also draw the inference."  *Id.*; *see also George v. Diaz*, No. 20-CV-03244-SI, 2020 WL 5073996, at *3–4 (N.D. Cal. Aug. 24, 2020) (dismissing prisoner's "bare allegations of the existence of [COVID-19] and a desire to avoid contracting it" as "simply… not enough to state an Eighth Amendment deliberate indifference claim" pursuant to 28 U.S.C. § 1915A).  Plaintiff's Complaint fails to contain "sufficient factual matter, accepted as true" to plausibly show any of the named Defendants acted with deliberate indifference to his health or safety, or any risk of harm known to them when they denied him parole on September 6, 2019—more than two months before COVID-19 was first identified, and before it became a global pandemic.  *Iqbal*, 556 U.S. at 678.

In fact, the Court takes judicial notice of public records related to the COVID-19 health crisis pursuant to Fed. R. Evid. 201(c)(1), including documents available through government agency websites.  *See United States v. McKinney*, No. CR18-096 RSM, 2020 WL 6076898, at *1 (W.D. Wash. Oct. 15, 2020).  These records show "Coronavirus disease 2019 (COVID-19) is caused by a new coronavirus first identified in Wuhan,

China, *in December 2019.*" *See* https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/about-COVID-19.html (last visited Dec. 7, 2020) (emphasis added); *see also George*, 2020 WL 5073996, at *2 (taking judicial notice of materials on the CDCR's website outlining action addressing the spread of COVID-19 in the California prison system); https://www.cdcr.ca.gov/covid19/ ("COVID-19 preparedness and response efforts at institutions") (last visited Dec. 7, 2020).

Thus, to the extent Plaintiff's Eighth Amendment conditions of confinement claims may be properly raised pursuant to 42 U.S.C. § 1983, they are nevertheless subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and § 1915A(b)(1). *See Watison,* 668 F.3d at 1112; *Wilhelm,* 680 F.3d at 1121.

G.      Leave to Amend

Because Plaintiff is proceeding without counsel and it is not "absolutely clear that the deficiencies of [his] complaint could not be cured by amendment," the Court will grant him leave to fix them, if he can. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("'Before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'") (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

**IV.    Conclusion and Orders**

For the reasons explained, the Court:

1.      **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (Doc. No. 2).

2.      **DIRECTS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER

ASSIGNED TO THIS ACTION.

3.    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4.    **DENIES** Plaintiff's Motion to Withdraw and Dismiss "Cavalier v. Pollard" (Doc. No. 3) as moot.

5.    **DISMISSES** Plaintiff's Complaint *sua sponte* for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1); and

6.    **GRANTS** Plaintiff 45 days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

DATE: December 11, 2020

HON MICHAEL M. ANELLO
United States District Judge